LEO V. DI CARA, Plaintiff, *v.* JOMATT CONSTRUCTION CORP., Defendant.

District Court of Suffolk County, December 16, 1966.

*Reilly, Like & Schneider* for defendant.

ALEXANDER W. KRAMER, J. Action by plaintiff to recover $300.

On or about April 24, 1965, plaintiff and defendant entered into a contract wherein and whereby plaintiff agreed to purchase seller's Job No. 51, Map of Dix Hills Village, Section 3. The purchase price was $28,540. The transaction contemplated the construction of a dwelling on the site by defendant. The closing date established in the contract was March 1, 1966.

On August 1, 1965, article 28 of the Tax Law of the State of New York became effective. It, in general, imposed a tax on sales of personalty, commonly known as the New York State Sales Tax.

On August 10, 1965, the defendant wrote to the plaintiff as follows:

Mr. and Mrs. Leo V. Di Cara
1835 Corporal Kenedy Street
Bayside, New York

Dear Mr. and Mrs. Di Cara:

On August 1, 1965 the State of New York made effective a 2% sales tax. This means that your home will now cost you approximately $300 more. I am required to pay a 2% sales tax on all material that goes into your home and not labor. I am sorry that you have to pay this extra cost but as you can very well understand, this is beyond my control.

This additional $300 will be due at title closing and if you have any questions, please feel free to contact us.

Very truly yours,

(Signed)     JOMATT CONSTRUCTION CORP.
Matthew J. Forte
Vice-President

On March 10, 1966, title closed. At the closing plaintiff objected to the payment of the $300. He was told, in effect: "No $300, no closing." Plaintiff testified that he was all packed and ready to move into his new home. Rather than face the difficulties which might flow from not closing, plaintiff paid the $300 under protest. He insisted upon the signing of an agreement to that effect. Said agreement provided: "In connection with the closing of title to premises known as 19 Millett Street, Dix Hills, Huntington, New York, held this date, the undersigned hereby agrees that the payment of $300 in reimbursement of New York State sales tax incurred by the seller for purchase of materials in construction of the dwelling, is being made under protest and the parties reserve their respective rights to contest and/or defend the payment and/or charge of this amount; said rights to survive delivery of the deed."

The agreement was signed by plaintiff and his wife and one purporting to act as defendant's assistant secretary.

Defendant resists this action, contending:

1. The original contract was modified by virtue of its letter of August 10, 1965.

2. The execution and delivery of the deed precludes this action, since the cause therefore cannot survive the execution and delivery of the closing instruments.

3. The seller (defendant herein) had the right to increase the price by virtue of paragraph "17" of the contract of sale.

We shall consider each contention seriatim.

This court holds that contention No. 1 is untenable.

"A contract is a solemn and binding obligation between the parties thereto and it cannot be set aside and held for naught by the parties themselves without cause *unless both parties assent.*" (Emphasis supplied; 10 N. Y. Jur., Contracts, p. 409.)

"It is a general rule that a contract cannot be modified or altered without the consent of *all* parties thereto." (Emphasis supplied; *idem,* p. 413.)

Paragraph 21 of the main contract provides: "It is expressly understood and agreed that this contract states the entire agreement and that the seller is not and shall not be bound by any stipulations, representations, agreements or promises, oral or otherwise, not printed or inserted in this contract."

In other words, the contract could not be varied except by a writing inserted therein. "By statute, an executory agreement is ineffective to change or modify a written agreement which contains a provision to the effect that it cannot be changed orally, *unless such executory agreement is in writing and signed by the party against whom enforcement of the change or modification is sought or by his agent.* It was the purpose of the legislature in enacting the statute to afford protection to parties entering into written contracts. The statute seems to contemplate a *signed* writing in the nature of an agreement to alter the original contract. The requirement is not met by an unsigned memorandum of a discussion indicating an intention to change the original agreement. In other words, the statute is not satisfied by a written memorandum of an oral agreement. *Nor will letters referring to the original contract supply the writing demanded by the statute where the letters do not constitute an agreement.*" (Emphasis supplied; pp. 414–415.)

This court further holds that contention No. 2 is untenable. Paragraph 22 of the main contract provides: "Anything to the contrary herein contained notwithstanding, it is specifically understood and agreed by the parties hereto that the acceptance and delivery of the deed of conveyance at the time of the closing of title hereunder, without specific written agreement *which by its terms shall survive such closing of title,* [emphasis supplied] shall be deemed to constitute full compliance by the seller with the terms, covenants and conditions of this contract on its part to be performed. It is further agreed that none of the terms hereof except those specifically made to survive title closing shall survive such title closing".

We hold that the agreement dated March 10, 1966, signed by all the parties, fully complies with this provision.

Finally, this court holds that contention No. 3 is untenable. The defendant had no right to increase the price as now contended by it. Paragraph "17" gave the defendant the right to *cancel* the contract in the event that "cost of construction to the seller should increase prior to the completion of the house." The contract was prepared by the defendant. It must be construed strictly against it. Nowhere is the seller given the right to increase the price. It may *cancel,* provided that it remits to the purchasers (the plaintiff herein) the down payment. This the defendant never did.

Judgment is therefore directed in favor of the plaintiff for the sum of $300, together with interest thereon from March 10, 1966, as well as the costs and disbursements of this action.