■ In the Matter of FRANK MCCONNELL, Appellant. WARREN HARRIS, as Clinical Director of St. Lawrence Psychiatric Center, Respondent.—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court (Livingston, J.), entered September 18, 1987 in St. Lawrence County, which granted petitioner's application pursuant to the Mental Hygiene Law authorizing the involuntary treatment of respondent.

Respondent, now 56 years of age, who first received psychiatric treatment in 1970, has been a patient at St. Lawrence Psychiatric Center (hereinafter the center) in St. Lawrence County since December 1984, except for four days in August 1985 when he was released by court order, after which he voluntarily readmitted himself. His request, made in April 1987, to be released from the center prompted it to apply for his involuntary retention pursuant to Mental Hygiene Law § 9.13 (b); he has since been an involuntary patient.

In August 1987, petitioner commenced the instant proceeding seeking an order authorizing the center to treat respondent with neuroleptic medications over the latter's objection. (Approximately a year earlier, petitioner had denied a similar request by his staff to treat respondent without his consent.) A hearing was held at which respondent himself testified. Although in the past he had experienced adverse effects from neuroleptics, the primary reason given by respondent for refusing medication at this time was that he was not ill.

The uncontroverted testimony of respondent's treating psychiatrist, Dr. Janet Lim, and a center psychiatrist called upon to review the treatment recommendation, Dr. John Appleby, was that respondent suffered from a bipolar disorder, manic phase with psychotic features. The prognosis for improvement without medication was poor. In fact, Appleby stated the only alternative to the proposed course of drug treatment was continued hospitalization, which he deemed unsatisfactory. On the other hand, by treating him with the appropriate psychotropic drugs, as set out in the proposed course of treatment—amended at trial to include lithium—the psychiatrists expected an abatement of respondent's paranoid delusions which otherwise make it impossible to reason with him and, as necessary, to check any resulting depression. This in turn would allow for group or individual psychotherapy which

could be administered on an out-patient basis. Potential adverse side effects of the neuroleptic medicines include extrapyramidal symptoms and tardive dyskinesia; but it was anticipated these effects would be minimized, despite respondent's former adverse reaction to similar drugs, by use of small dosages and to be counteracted by antichlorinergic drugs. Lim conceded on cross-examination that she had consulted with respondent to obtain his consent to a hernia operation but explained that while his mental disorder did not interfere with his ability to perceive and deal rationally with a physical ailment, he lacked insight into his mental condition.

Supreme Court found clear and convincing evidence that respondent lacks "th[e] capacity to determine the course of his own treatment" and that the proposed treatment is narrowly tailored to protect his liberty interest. Respondent appeals; we affirm.

In making this application petitioner is relying not on the State's police power, for respondent has not manifested a real and immediate danger to himself or others, but on the State's *parens patriae* interest in providing for its citizens who cannot care for themselves *(see, Rivers v Katz,* 67 NY2d 485, 496-497; *cf., Matter of Boggs v New York City Health & Hosps. Corp.,* 132 AD2d 340, 341-342, *appeal dismissed* 70 NY2d 972, citing *Addington v Texas,* 441 US 418). The uncontroverted expert testimony is that respondent suffers from a debilitating mental illness which he himself fails to perceive, a conclusion borne out by respondent's own testimony *(see, Matter of Eleanor R. v South Oaks Hosp.,* 123 AD2d 460, *lv denied* 69 NY2d 602). Supreme Court found as a fact that respondent's mental state is such that he is incapable of making a reasoned or principled decision regarding his own treatment *(see, Rivers v Katz, supra).* That finding is entitled due deference. We not only concur in that assessment, but further agree that considering all the relevant circumstances, including respondent's best interest, the potential benefits and hazards of the intended treatment and the lack of less intrusive alternatives, there is clear and convincing evidence that the proposed treatment is narrowly tailored to protect his liberty interest *(see, supra,* at 497-498).

Respondent expresses a very legitimate concern over the absence of any time limit or mandatory review of the forced medications being allowed *(see, supra,* at 498). However, since the order at issue is premised on respondent's inability to make decisions regarding the management of his mental illness, and envisions a treatment program closely monitored

by concededly qualified psychiatrists, manifestly the order's forcefulness will end as soon as respondent is no longer so incapacitated.

Lastly, we note that Supreme Court did not err in permitting petitioner to amend his application to include lithium in the treatment regimen, for the evidence indicated that lithium is the medication of choice for a bipolar disorder and respondent did not show any prejudice (see, CPLR 3025 [c]; *Plattsburgh Distrib. Co. v Hudson Val. Wine Co.,* 108 AD2d 1043, 1044; *G. W. Ehrhart, Inc. v Heller,* 105 AD2d 907, 909).

Judgment affirmed, without costs. Kane, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.